## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 23-53233 |
| CUSITECH, LLC, | Judge Tiffany Strelow Cobb |
| Debtor. | Chapter 7 |

---

**Christal L. Caudill, Chapter 7 Trustee**,
4260 Tuller Road, Suite 102                      Adv. Pro. No. 25-2055
Dublin, OH 43017,

     Plaintiff,

     vs.

US Small Business Administration
Attn. Philip Morrison Attorney
65 E. State Street Suite 1350
Columbus OH 43215

Money Well Lending LLC
Attn. CEO or President
16910 NE 79th Way
Vancouver WA 98682

MW GRP Capital
Attn. CEO or President
398 South Mill Ave.
Tempe AZ 85281

Samson Funding Corporation
Attn. CEO or President
17 State Street
New York NY 10004

Samson Funding
Attn. CEO or President
90 W. John Street 4th FL
New York NY 10038

Samson MCA LLC
Attn. CEO or President
1545 Route 202 Suite 101
Pomona NY 10970

Pearl Delta Funding LLC
Attn. CEO or President
80 State Street
Albany NY 12207

Pearl Capital Business Funding LLC
Attn. CEO or President
525 Washington Blvd.
Jersey City NJ 07310

Alantes Corporate Finance LLC
Attn. CEO or President
234 5th Avenue, 2nd Fl,
New York, NY, 10001

Downtown Electric and Lighting Inc.
Attn. Joseph Bloomquist President
78 Tumbleweed Trail
Penrose CO 81240

Systems Electric Inc.
Attn. Jack Holleson President
5295 Suburban Dr.
Colorado Springs CO 80911

Steve Vandenburg
1093 Fenway Dr.
Port Saint Lucie FL 34953

Steve's Electric of South Florida Inc.
Attn. Steve Vandenburg President
1093 Fenway Dr,
Port Saint Lucie FL 34953

  Defendants.

**<u>AMENDED COMPLAINT TO (1) DETERMINE THE VALIDITY, EXTENT, OR
PRIORITY OF LIENS IN PROPERTY; (2) AVOID PREFERENTIAL TRANSFERS
INCLUDING SECURITY INTERESTS; (3) RECOVER AVOIDED TRANSFERS; (4)
AVOID FRAUDULENT TRANSFERS; (5) RECOVER FRAUDULENT TRANSFERS;
(6) AVOID POST PETITION TRANSFERS; (7) RECOVER POST PETITION</u>**

**TRANSFERS; (8) AVOID CONVERSION OF PROPERTY AND/OR OBTAIN
TURNOVER OF PROPERTY; (9) OBTAIN SANCTIONS AND OTHER RELIEF FOR
THE VIOLATION OF THE AUTOMATIC STAY; (10) OBTAIN MONEY JUDGMENTS;
(11) DISALLOW CLAIMS: (12) DISTRIBUTE SALE PROCEEDS TO PATHWAYS
FINANCIAL CREDIT UNION; AND FOR DECLARATORY RELIEF
AND OTHER RELATED RELIEF**

Plaintiff Christal L. Caudill (the "Plaintiff"), the chapter 7 trustee of the bankruptcy estate of CUSITECH, LLC (the "Debtor"), states the following for her complaint against the US Small Business Administration ("SBA"), Money Well Lending LLC, MW GRP Capital (collectively, the "Money Well Defendants"), Samson Funding Corporation, Samson Funding, Samson MCA LLC (collectively, the "Samson Defendants"), Pearl Delta Funding LLC, Pearl Capital Business Funding LLC (collectively, the "Pearl Defendants"), Alantes Corporate Finance LLC ("Alantes"), Downtown Electric and Lighting Inc. ("Downtown Electric"), Systems Electric Inc. ("Systems Electric"), Steve Vandenburg ("Vandenburg"), and Steve's Electric of South Florida Inc. ("Steve's Electric" and, together with Vandenburg, the "Vandenburg Defendants") (the SBA, Samson Defendants, Pearl Defendants, Alantes, Downtown Electric, Systems Electric, and Vandenburg Defendants are, collectively, the "Defendants"):

## NATURE OF THE ACTION

1.      The Plaintiff seeks to determine the validity, extent, and priority of liens of one or more of the Defendants in property pursuant to 11 U.S.C. §§ 506 and 544, and Federal Rule of Bankruptcy Procedure 3012

2.      The Plaintiff seeks to avoid and recover from one or more of the Defendants, or from any other person or entity for whose benefit the transfers were made,

all preferential transfers of property of the Debtor that occurred during the Preference Period[1] pursuant to 11 U.S.C. §§ 547 and 550.

3.      The Plaintiff seeks to avoid and preserve for the bankruptcy estate all liens perfected during the Preference Period and all unperfected liens.

4.      The Plaintiff seeks to avoid and recover from one or more of the Defendants, or from any other person or entity for whose benefit the transfers were made, all fraudulent transfers of property of the Debtor that occurred during the Fraudulent Transfer Period pursuant to 11 U.S.C. §§ 548 and 550.

5.      The Plaintiff seeks to avoid and recover from one or more of the Defendants, or from any other person or entity for whose benefit the transfers were made, all post-petition transfers of property of the Debtor that occurred after the Petition Date pursuant to 11 U.S.C. §§ 549 and 550.

6.      The Plaintiff seeks to avoid the conversion of property by one or more of the Defendants and/or obtain the turnover of property from one or more of the Defendants.

7.      The Plaintiff seeks to obtain money judgments against one or more of the Defendants.

8.      The Plaintiff seeks to disallow, pursuant to 11 U.S.C. §§ 502(d) and (j), any claim that the Defendant has filed or asserted against the Debtor or that has been scheduled for the Defendant until such time as the Defendant pays to the Plaintiff the amount equal to the Preferential Transfers.

9.      The Plaintiff seeks orders sustaining objections to certain claims.

---

[1] Capitalized terms are defined below.

10.     The Plaintiff seeks certain declaratory relief, including determinations of secured claims pursuant to 11 U.S.C. § 506.

11.     In addition, the Plaintiff seeks authority to distribute Sale Proceeds to Pathways Financial Credit Union ("Pathways").

## JURISDICTION & VENUE

12.     This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the entry of orders for the determination of validity, extent, and priority of liens, for avoidance, for money judgments, and for related relief against the Defendants.

13.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Pursuant to Bankruptcy Rule 7008, the Plaintiff states that this adversary proceeding arises under and relates to the above-captioned case pending in the above-stated District and Division of this Court.

14.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409, and the Plaintiff's monetary claims against the Defendants are in excess of the amounts set forth in 28 U.S.C. § 1409(b).

15.     This matter is a core proceeding pursuant to, among other provisions, 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (F), and (O).

16.     The statutory predicates for the relief sought in this proceeding are 11 U.S.C. §§ 502, 506, 542, 547, 548, and 550.

17.     Pursuant to Rule 7008, the Plaintiff consents to the entry of a final order or judgment in the event this proceeding is determined to be non-core.

18.     If it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Plaintiff consents to the Court entering final orders and judgments in this proceeding.

## **THE PARTIES**

19.     The Debtor filed a voluntary petition (the "Case") under chapter 7 of title 11 of the United States Code on September 19, 2023 (the "Petition Date").

20.     The Plaintiff is the duly appointed and acting chapter 7 trustee of the bankruptcy estate of the Debtor, with standing and authority to bring this proceeding, and the Plaintiff brings this action solely in her capacity as trustee.

21.     The Debtor is a limited liability company organized under the laws of the State of Ohio.

22.     The Debtor operated a commercial construction business, with offices in Ohio, Colorado, and Florida. The Debtor's principal place of business and its executive office was located at 833 Green Crest Dr., Westerville, Ohio 43081.

23.     During the ninety (90) day period prior to the Petition Date, that is, between June 21, 2023, and September 19, 2023 (the "Preference Period"), the Debtor operated its business affairs, including the payment to creditors by checks, wire transfers, direct deposits, or otherwise.

24.     Pathways is not a party in this adversary proceeding but is referred to in the adversary proceeding and is the beneficiary of proposed relief that the Plaintiff requests in this adversary proceeding. Upon information and belief, Pathways is a credit union chartered under the laws of the State of Ohio with its principal place of business located at 5665 N. Hamilton Rd., Columbus, Ohio 43230.

25.     Upon information and belief, the Samson Defendants are related business entities with a principal place of business located at the address in the case caption. Each of the Samson Defendants does business in Ohio, whether or not they are formally registered as a foreign entity with the Ohio Secretary of State.

26.     Upon information and belief, the Money Well Defendants are related business entities with a principal place of business located at the address in the case caption. Each of the Money Well Defendants does business in Ohio, whether or not they are formally registered as a foreign entity with the Ohio Secretary of State.

27.     Upon information and belief, the Pearl Defendants are related business entities with a principal place of business located at the address in the case caption. Each of the Pearl Defendants does business in Ohio, whether or not they are formally registered as a foreign entity with the Ohio Secretary of State.

28.     Upon information and belief, Alantes is a business entity with a principal place of business located at the address in the case caption. Alantes does business in Ohio, whether or not it is formally registered as a foreign entity with the Ohio Secretary of State.

29.     Upon information and belief, Downtown is a business entity organized in the State of Colorado with a principal place of business located at the address in the case caption.

30.     Upon information and belief, Systems Electric is a business entity organized in the State of Colorado with a principal place of business located at the address in the case caption.

31.    Upon information and belief, Vandenburg is an individual, is a resident of the State of Florida, and either resides or does business at the address in the case caption.

32.    Upon information and belief Steve's Electric is a business entity organized in the State of Florida with a principal place of business located at the address in the case caption.

33.    Vandenburg is the President of Steve's Electric and is an owner of Steve's Electric.

**<u>FACTUAL BACKGROUND RELEVANT TO ALL COUNTS AND CLAIMS</u>**

34.    On or about November 16, 2018, the Debtor executed a commercial loan agreement with Pathways ("Pathways Loan Agreement No. 1"). Pursuant to the terms of the Pathways Loan Agreement No. 1, the Debtor agreed to repay Pathways the sum of $1,295.618, together with interest, on the terms provided in the Pathways Loan Agreement No. 1.

35.    On or about November 16, 2018, the Debtor executed a security agreement ("Pathways Security Agreement No. 1") to secure the Pathways Loan Agreement No. 1. Pursuant to the Pathways Security Agreement No. 1, the Debtor granted Pathways a security interest in all accounts, inventory, equipment, and other assets of the Debtor except for motor vehicles (the "Debtor's Assets"; and a "Blanket Lien").

36.    Pathways filed a UCC Financing Statement with the Ohio Secretary of State on November 6, 2018 ("Pathways UCC"). The Pathways UCC was continued by an Amendment filed on June 14, 2023.

37.     On or about January 6, 2023, the Debtor executed a business line of credit agreement with Pathways ("Pathways Loan Agreement No. 2"). Pursuant to the terms of the Pathways Loan Agreement No. 2, the Debtor was authorized to borrow up to $750,000 and agreed to repay Pathways all amounts borrowed pursuant to the Pathways Loan Agreement No. 2, together with interest, on terms provided in the Pathways Loan Agreement No. 2.

38.     On or about January 6, 2023, the Debtor executed a security agreement ("Pathways Security Agreement No. 2") to secure the Pathways Loan Agreement No. 2. Pursuant to the Pathways Security Agreement No. 2, the Debtor granted Pathways a Blanket Lien on the Debtor's Assets.

39.     The Pathways Security Agreement No. 2 was perfected by the filing of the Pathways UCC.

40.     Pathways filed proof of claim no. 5 ("Pathways POC No. 5") in the Debtor's Case on November 13, 2023, in the amount of $823,537.10 regarding the Pathways Loan Agreement No. 1. A copy of the Pathways POC No. 5 is attached as **Exhibit A** and incorporated by reference. Copies of the Pathways Loan Agreement No. 1, the Amendment to the Pathways Loan Agreement No. 1, the Pathways Security Agreement No. 1, the Amendment to the Pathways Security Agreement, the Pathways UCC, and the Amendment to the Pathways UCC are all attached to the Pathways POC No. 5.

41.     Pathways filed proof of claim no. 6 ("Pathways POC No. 6") in the Debtor's Case on November 13, 2023, in the amount of $750,000 regarding the Pathways Loan Agreement No. 2. A copy of the Pathways POC No. 6 is attached as **Exhibit B** and incorporated by reference. Copies of the Pathways Loan Agreement No. 2, the Pathways

Security Agreement No. 2, the Pathways UCC, and the Amendment to the Pathways UCC are all attached to the Pathways POC No. 6.

42.     On or about May 28, 2020, the Debtor executed a disaster loan agreement with the SBA ("SBA Loan Agreement"). Pursuant to the terms of the SBA Loan Agreement the Debtor agreed to repay the SBA the sum of $150,000, together with interest, on the terms provided in the SBA Loan Agreement. The SBA Loan Agreement No. 1 was modified on or about November 22, 2021.

43.     On or about May 28, 2020, the Debtor executed a security agreement ("SBA Security Agreement") to secure the SBA Loan Agreement. Pursuant to the SBA Security Agreement, the Debtor granted Blanket Lien on the Debtor's Assets. An Amended SBA Security Agreement was executed on or about November 22, 2021.

44.     The SBA filed a UCC Financing Statement with the Ohio Secretary of State on July 5, 2020 ("SBA UCC").

45.     The SBA filed proof of claim no. 15 ("SBA POC No. 15") in the Debtor's Case on December 6, 2023, in the amount of $518,783 regarding the SBA Loan Agreement. Copies of the SBA Loan Agreement, the Amendment to the SBA Loan Agreement, the SBA Security Agreement, the Amended SBA Security Agreement, and the SBA UCC are all attached to the SBA POC No. 15. A copy of the SBA POC No. 15 is attached as **Exhibit C** and incorporated by reference.

46.     The Samson Defendants are identified together because it is impossible to determine from the Debtor's records or the public records which of the Samson Defendants is the holder of rights or claims against the Debtor or the Debtor's Assets. This is because a total of three (3) proofs of claim were filed asserting claims against the

Debtor, and those proofs of claim contain (i) references to each of the Samson Defendants and (ii) conflicting information.

47.     Samson Funding filed proof of claim no. 2 ("Samson POC No. 2") in the Debtor's Case on October 16, 2023, in the amount of $1,937,082.26. A copy of the Samson POC No. 2 is attached as **Exhibit D** and incorporated by reference.

48.     Samson Funding filed proof of claim no. 3 ("Samson POC No. 3") in the Debtor's Case on October 16, 2023, in the amount of $1,937,082.26. A copy of the Samson POC No. 3 is attached as **Exhibit E** and incorporated by reference. Samson POC No. 3 appears to be a duplicate of, or an amendment to, Samson POC No. 2, but does not so indicate on the face of Samson POC No. 3.

49.     Samson MCA LLC filed proof of claim no. 19 ("Samson POC No. 19") in the Debtor's Case on January 4, 2024, in the amount of $2,556,778.28. A copy of the Samson POC No. 19 is attached as **Exhibit F** and incorporated by reference. Samson POC No. 19 appears to be a duplicate of, or an amendment to, either Samson POC No. 2 or Samson POC No. 3, but does not so indicate on the face of Samson POC No. 19.

50.     Samson POC No. 2, Samson POC No. 3, and Samson POC No. 19 (collectively, the "Samson POCs") each attach essentially the same documents as exhibits. Each of the Samson POCs attach a copy of a revenue purchase agreement ("Samson RPA") dated February 14, 2023, between the Debtor and Samson MCA LLC together with an undated Security Agreement and Performance Guaranty ("Samson Security Agreement"). In addition, each of the Samson POCs attach a UCC Financing Statement ("Samson UCC") filed with the Ohio Secretary of State on February 16, 2023,

indicating that the secured party is MV GRP Capital. Copies of these documents are attached to each of the Samson POCs.

51.     The Samson RPA agrees to convey to one or more of the Samson Defendants certain percentages (the "Purchased Percentages") of future payments ("Future Receipts") owed to the Debtor by its customers. The Samson RPA states that the Debtor is selling a certain percentage of a future revenue stream at a discount to one or more of the Samson Defendants and that the transaction is **not a loan**. In addition, the Samson RPA states that the Debtor is only guaranteeing performance of the Samson RPA – not the payment of the agreement. Yet, despite the transaction not being described as a loan and despite there not being any payment obligation by the Debtor under the Samson Security Agreement, the Samson Defendants attempt to grant one or more of the Samson Defendants a security interest in "all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory" of the Debtor.

52.     Despite the name of the Samson RPA, the Samson RPA is not a purchase of accounts from the Debtor. Instead, the Samson RPA is a disguised loan with unreasonable and usurious terms. Among other things, if the Samson RPA was a purchase of accounts the Samson RPA would:

    A.  Identify the accounts being purchased;

    B.  Provide that Samson would be paid from the collection of the identified accounts;

    C.  Limit the Debtor's financial obligations to damages for default regarding the sale of the accounts;

D.  Not charge interest, fees, or other charges to the Debtor, except in the event of a default regarding the sale of the accounts; and

E.  Not grant the Samson Defendants a Blanket Lien on the Debtor's Assets.

53.   In addition, the following facts and characteristics apply to the Samson RPA and identify it as a loan instead of a purchase:

A.  The true risk of loss never transferred to the Samson Defendants on the accounts that were purported to be sold;

B.  Based upon information and belief, the Debtor was required to submit a credit application and do a credit check before entering into the Samson RPA;

C.  Based upon information and belief, the Samson Defendants entered into the Samson RPA based on the assessment of Debtor's credit worthiness;

D.  The Debtor was required to obtain the personal guaranty of the Samson RPA by a representative of the Debtor; and

E.  The Debtor was required to authorize the Samson Defendants to take periodic withdrawals from the Debtor's account and/or be paid certain amounts regardless of whether the purchase receivables were collected, the amount collected, or the source of funds.

54.   One or more of the Samson Defendants may have obtained a default judgment against the Debtor in the State of New York on or about September 13, 2023 ("Samson Judgment").

55.      Samson MCA LLC obtained a judgment ("Samson MCA Judgment") against the Debtor in the Supreme Court of the State of New York, Ontario County, on October 4, 2023, which was after the Petition Date. A copy of the Samson MCA Judgment is attached to Samson POC No. 19.

56.      The Samson Defendants may have collected accounts receivable from the Debtor's customers in the Preference Period ("Samson Collection Payments") in amounts that can only be determined by discovery in this adversary proceeding.

57.      The Debtor made the following payments to the Samson Defendants ("Samson Direct Payments") during the Preference Period:

| Date | Amount |
| --- | --- |
| 6/23/23 | $100,007 |
| 6/23/23 | $39,358 |
| 6/23/23 | $39,358 |
| 6/30/23 | $21,723 |
| 6/30/23 | $21,000 |
| 6/30/23 | $17,635 |
| 7/2/23 | $39,358 |
| 7/21/23 | $17,635 |
| 7/21/23 | $21,723 |
| 8/2/23 | $39,358 |

58.      The Debtor and Downtown Electric executed a purchase agreement ("Downtown Electric Purchase Agreement") and a related security agreement ("Downtown Electric Security Agreement") on or about April 15, 2021. The Downtown

Electric Security Agreement granted Downtown Electric a security interest in the assets ("Downtown Electric Assets", which are a part of the Debtor's Assets) that the Debtor purchased from Downtown Electric. The Debtor took possession of the Downtown Electric Assets in or about April 2021. Upon knowledge and belief Downtown Electric did not file a UCC Financing Statement in Colorado or in any other state until Downtown Electric filed a UCC Financing Statement in Ohio on June 26, 2023 ("Downtown Electric UCC") – which was within 90 days of the filing of the Debtor's Case and more than thirty (30) days after the Debtor took possession of the Downtown Electric Assets.

59.     Downtown Electric filed proof of claim no. 25 ("Downtown Electric POC No. 25") in the Debtor's Case on January 23, 2024, in the amount of $249,691.72. A copy of the Downtown Electric POC No. 25 is attached as **Exhibit G** and is incorporated by reference. Copies of the Downtown Electric Purchase Agreement, the Downtown Electric Security Agreement, and the Downtown Electric UCC are attached to the Downtown Electric POC No. 25.

60.     Pursuant to the provisions of Colorado § 4-9-307(b)(3), the Debtor is located in Ohio. Pursuant to the provisions of Colorado § 4-9-301, Ohio law controls the perfection of the security interest of Downtown Electric in the Debtor's Assets.

61.     ORC § 1309.301 also provides that Ohio law controls the perfection of the security interest of Downtown Electric in the Debtor's Assets.

62.     ORC §§ 1309.307 and 1309.501 provide that the perfection of a security interest in the Debtor's Assets requires the filing of a UCC Financing Statement with the Ohio Secretary of State.

63.     ORC § 1309.108 governs the description of collateral that is required to effectively perfect a security interest in personal property in Ohio.

64.     The Debtor and Systems Electric executed a purchase agreement ("Systems Electric Purchase Agreement") and related note ("Systems Electric Note") on or about April 28, 2022. The Systems Electric Note granted Systems Electric a security interest in the assets ("Systems Electric Assets") that the Debtor purchased from Systems Electric.

65.     The Debtor took possession of the System Electric Assets in or about April 2022. Upon knowledge and belief Systems Electric did not file a UCC Financing Statement in Colorado or in any other state until Downtown Electric filed a UCC Financing Statement in Ohio on June 30, 2023 ("Systems Electric UCC") – which was within 90 days of the filing of the Debtor's Case and more than 30 days after the Debtor took possession of the Systems Electric Assets.

66.     Systems Electric filed proof of claim no. 31 ("Downtown Electric POC No. 31") in the Debtor's Case on February 2, 2024, in the amount of $549,548.22. A copy of the Systems Electric POC No. 31 is attached as **Exhibit H** and is incorporated by reference. Copies of the Systems Electric Purchase Agreement, the Systems Electric Note, and the Systems Electric UCC are attached to the Downtown Electric POC No. 31.

67.     Although the Debtor communicated with Alantes, Alantes did not loan any money to the Debtor, and the Debtor did not enter into any loan agreement or other agreement with Alantes. Accordingly, Alantes is not a creditor of the Debtor. Further, the Debtor did not grant a security interest to Alantes in the Debtor's Assets. The Debtor did not authorize Alantes to file a UCC Financing Statement. Nonetheless, Atlantes filed a

UCC Financing Statement ("Alantes UCC") with the Ohio Secretary of State on April 14, 2023, asserting a Blanket Lien in the Debtor's Assets. A copy of the Alantes UCC is attached as **Exhibit I** and incorporated by reference.

68.     The Debtor and Vandenburg entered into a purchase agreement ("Vandenburg Purchase Agreement"), a related note ("Vandenburg Note"), and security agreement ("Vandenburg Security Agreement") on or about February 28, 2022. Pursuant to the terms of the Vandenburg Purchase Agreement, the Debtor acquired certain motor vehicles, equipment, and inventory from Vandenburg ("Vandenburg Assets"). The Debtor took possession of the Vandenburg Assets sometime shortly after the execution of the Vandenburg Purchase Agreement. The Vandenburg Security Agreement granted Vandenburg a security interest in the Vandenburg Assets. Vandenburg filed a UCC Financing Statement ("Vandeburg Florida UCC") on March 8, 2022. Vandenburg did not file a UCC Financing Statement in Ohio ("Vandenburg Ohio UCC") until September 6, 2023. The Vandenburg Ohio UCC was filed more than 30 days after the Debtor took possession of the Vandenburg Assets and within 90 days of the Petition Date.

69.     Vandenburg filed proof of claim no. 20 ("Vandenburg POC No. 20") in the Debtor's Case on January 9, 2024, in the amount of $517,593.37. A copy of the Vandenburg POC No. 20 is attached as **Exhibit J** and is incorporated by reference. Copies of the Vandenburg Purchase Agreement, the Vandenburg Note, the Vandenburg Security Agreement, the Vandenburg Florida UCC, and the Vandenburg Ohio UCC are attached to the Vandenburg POC No. 20.

70.     Florida Statute § 679.3071(c) required that the law of Ohio controls regarding the perfection of a security interest in the Debtor's Assets.

71.     Vandenburg is the President of Steve's Electric. Upon information and belief, Vandenburg is either an owner of Steve's Electric or is the sole owner of Steve's Electric.

72.     The Vandenburg Defendants forcibly entered the Debtor's business location at 3808 & 3810 Crossroads Parkway, Ft. Pierce, Florida 34945 ("Debtor's Florida Office"), either prior to the Petition Date and/or after the Petition Date and, without legal authority, took possession of equipment and/or inventory[2] ("Converted Equipment and Inventory") of the Debtor and converted the Converted Equipment and Inventory to the use and benefit of the Vandenburg Defendants.

73.     The Vandenburg Defendants without legal authority either prior to the Petition Date or after the Petition Date collected accounts receivable ("Converted Accounts Receivable") owed to the Debtor and converted the accounts receivable to the use of the Vandenburg Defendants.

74.     The Converted Accounts Receivable include[3] the following payments:

| Payor | Amount |
| --- | --- |
| Management Resource Systems Inc. | $ 1,000 |
| CCD of Stuart Inc. | $51,124 |
| Darden's Restaurants | $28,004 |
| Mystic Valley Management | $11,917 |
| Chuck's Seafood | $10,545 |
| Custom Auto Center | $ 5,158 |
| JRM Construction Management LLC | $15,885 |
| TIN Investments | $ 9,226 |
| My Mechanic of the Treasure Coast | $   528 |
| All Hooked Up Towing | $ 1,284 |

---

[2] The itemization of the Converted Equipment and Inventory will be determined by discovery in this adversary proceeding.

[3] The total amount of the Converted Accounts Receivable will be determined by discovery in this adversary proceeding.

75.     The Converted Equipment and Inventory and the Converted Accounts Receivable, and their proceeds, or the claims regarding the same, are property of the bankruptcy estate in the Debtor's Case pursuant to 11 U.S.C. § 541 ("Section 541").

76.     The actions by the Vandenburg Defendants regarding the Converted Equipment and Inventory and the Converted Accounts Receivable were taken by the Vandenburg Defendants intentionally, maliciously, in violation of law, with the intent to harm the Debtor and the Debtor's Assets or property, fraudulently, and without any legal or factual justification or defense. In conjunction with these actions the Vandenburg Defendants made false statements and representations to customers of the Debtor, misrepresented the relationship between the Vandenburg Defendants and the Debtor, and engaged in actual fraud.

77.     On or about June 2, 2023, the Debtor executed a revenue purchase agreement ("Pearl RPA"[4]) agreeing to convey to the Pearl Defendants certain percentages ("Purchased Percentages") of future payments ("Future Receipts") owed to the Debtor by its customers. The Pearl RPA states that the Debtor is selling a certain percentage of a future revenue stream at a discount to the Pearl Defendants and that the transaction is **not a loan**. In addition, the Pearl RPA states that the Debtor is only guaranteeing performance of the Pearl RPA – not the payment of the agreement. Yet, despite the transaction not being described as a loan and despite there not being any payment obligation by the Debtor under the Pearl RPA, the Pearl Defendants attempt to obtain a security interest (the "Pearl Security Agreement") in "all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory" of the Debtor.

---

[4] The Pearl RPA and the Samson RPA are at least virtually the same and may well be entirely the same in all respects.

78.     A copy of the Pearl RPA is attached as **Exhibit K** and incorporated by reference.

79.     A copy of the Pearl Security Agreement is attached as **Exhibit L** and incorporated by reference.

80.     The Pearl Defendants filed a UCC Financing Statement ("Pearl UCC") with the Ohio Secretary of State on July 5, 2023. A copy of the Pearl UCC is attached as **Exhibit M** and incorporated by reference. Upon information and belief, the Pearl Defendants paid the amount due to the Debtor pursuant to the Pearl RPA more than 30 days before the filing of the Pearl UCC.

81.     Despite the name of the Pearl RPA, the Pearl RPA is not a purchase of accounts from the Debtor. Instead, the Pearl RPA is a disguised loan with unreasonable and usurious terms. Among other things, if the Pearl RPA was a purchase of accounts the Pearl RPA would:

    A.  Identify the accounts being purchased;

    B.  Provide that the Pearl Defendants would be paid from the collection of the identified accounts;

    C.  Limit the Debtor's financial obligations to damages for default regarding the sale of the accounts;

    D.  Not charge interest, fees, or other charges to the Debtor except in the event of a default regarding the sale of the accounts; and

    E.  Not grant the Pearl Defendants a Blanket Lien on the Debtor's Assets.

82.     In addition, the following facts and characteristics apply to the Pearl RPA and identify it as a loan instead of a purchase:

A. The true risk of loss never transferred to the Pearl Defendants on the accounts that were purported to be sold;

B. Based upon information and belief, the Debtor was required to submit a credit application and do a credit check before entering into the Pearl RPA;

C. Based upon information and belief, the Pearl Defendants entered into the Pearl RPA based on the assessment of Debtor's credit worthiness;

D. The Debtor was required to obtain the personal guaranty of the Pearl RPA by a representative of the Debtor; and

E. The Debtor was required to authorize the Pearl Defendants to take periodic withdrawals from the Debtor's account and/or be paid certain amounts regardless of whether the purchase receivables were collected, the amount collected, or the source of funds.

83.    The Pearl Defendants collected the following payments from customers ("Pearl Collection Payments")[5] of the Debtor during the Preference Period:

| Payor | Date | Amount |
|-------|------|--------|
| Safelite | 9/13/23 | Unknown – Check No. 600993606 |

84.    The Debtor made the following payments to the Pearl Defendants during the Preference Period ("Pearl Direct Payments"):

| Date | Amount |
|------|--------|

---

[5] The Plaintiff does not believe that all the Pearl Collection Payments have been identified by the Debtor because the information regarding the Pearl Collection Payments is within the control and knowledge of the Pearl Defendants and the Plaintiff has been able to obtain information regarding the Pearl Collection Payments only by indirect means.

| 6/19/23 | $9,624.94 |
| 6/23/23 | $9,624.94 |
| 7/6/23 | $9,624.94 |

85.     The Pearl Defendants did not file a proof of claim in the Debtor's Case.

86.     The Plaintiff sold the Debtor's Assets[6] located in Florida, Colorado, and Ohio for a net total of $240,750. Pathways obtained relief from stay in the Debtor's Case regarding accounts receivable owed to the Debtor and collected a total of $256,152. The value of the Debtor's Assets that secured the Pathways Loan Agreement No. 1 and the Pathways Loan Agreement No. 2 is $496,902.

87.     Pathways holds a valid and perfected security interest in, and lien upon, the Debtor's Assets. The perfected security interest in and lien of Pathways upon the Debtor's Assets ("Pathways Secured Position") is senior and superior to the security interest and lien of any Defendant in the adversary proceeding. However, because of the value of the Debtor's Assets, both on the Petition Date and as subsequently established by the Trustee's sale of the Debtor's Assets and the collection of accounts receivable by Pathways, Pathways is an under-secured creditor in the Debtor's Case pursuant to the provisions of 11 U.S.C. § 506 ("Section 506").

88.     With respect to any transfer of money or its equivalent, as a preference pursuant to the provisions of 11 U.S.C. § 547 ("Preferential Transfer"), the Plaintiff states as follows:

89.     Prior to filing this case, the Plaintiff, in accordance with 11 U.S.C. § 547(b), conducted reasonable due diligence into the circumstances of the case to take into

---

[6] Not including unencumbered motor vehicles.

account any known or knowable defenses of the Defendant that would be available under 11 U.S.C. § 547(c). The Plaintiff reviewed the available records of the Debtor, which records were not fully complete. Nevertheless, the Plaintiff took reasonable care to evaluate the possible defenses here.

90.    To the best of the Plaintiff's knowledge, no Defendant is entitled to the "contemporaneous exchange" affirmative defense under 11 U.S.C. § 547(c)(1) because there was no exchange of value at the time of the Preferential Transfers.

91.    To the best of the Plaintiff's knowledge, no Defendant is entitled to the "ordinary course of business" affirmative defense under 11 U.S.C. § 547(c)(2) because, primarily, the Preferential Transfers were made outside of the ordinary course of business between the Debtor and the Defendant.

92.    The defense under 11 U.S.C. § 547(c)(3) does not apply to the Preferential Transfers because the Preferential Transfers did not involve the perfection of a security interest (unless specifically stated).

93.    To the best of the Plaintiff's knowledge, no Defendant provided any new consideration after the Preferential Transfers that would give rise to the "new value" defense under 11 U.S.C. § 547(c)(4).

94.    The affirmative defense under 11 U.S.C. § 547(c)(7) does not apply to the Preferential Transfers because the Preferential Transfers are not related to a payment for a domestic support obligation.

95.    The affirmative defense under 11 U.S.C. § 547(c)(8) does not apply to the Preferential Transfers because this is a business case, and that defense only applies to cases where the debts are primarily consumer debts.

96.     The affirmative defense under 11 U.S.C. § 547(c)(9) does not apply to the
Preferential Transfers because the Preferential Transfers are in excess of the statutory
minimum for recovery, which is presently $8,575.00.

97.     During this adversary proceeding, Plaintiff may learn (through discovery or
otherwise) of facts or information that would create additional claims or causes of action
against some or all of the Defendants, including additional transfers made to a Defendant
during the Preference Period and/or additional unauthorized post-petition transfers made
by Debtor to a Defendant, or additional conversions of property, violations of the
automatic stay, collections of accounts receivable by a Defendant or other actions or
claims. It is Plaintiff's intention to (a) avoid and recover all (i) voidable transfers of an
interest of the Debtor in property and/or property of the estate that were made by the
Debtor to or for the benefit of a Defendant, or any other person or entity for whose benefit
such transfers were made, and/or (ii) unauthorized post-petition transfers to Defendant or
any other person or entity for whose benefit such transfers were made, (b) avoid all liens
that were not properly perfected or were perfected within the Preference Period, and (c)
pursue all other claims against the Defendants.

98.     Plaintiff reserves the right to amend this original Complaint to include: (i)
further information regarding the facts or claims asserted, (ii) additional transfers
(including unauthorized post-petition transfers), (iii) modifications of and/or revisions to a
Defendant's name, (iv) additional defendants, and/or (v) additional causes of action,
including without limitation, actions under 11 U.S.C. §§ 510, 542, 544, 545, 547, 548, 552,
and/or 553, if applicable (collectively, the "Amendments"), that may become known to
Plaintiff at any time during this adversary proceeding, through formal discovery or

otherwise, and for the Amendments to relate back to the date of the filing of this original Complaint.

## CLAIMS AND CAUSES OF ACTION

**Claims Against the SBA** - Section 506 Valuation and Objection to Claim

99.    The Plaintiff restates and reaffirms all prior paragraphs as if fully rewritten.

100.    The security interest of the SBA in the Debtor's Assets and its lien upon the Debtor's Assets are both junior and subordinate to the Pathways Secured Positoin.

101.    Because the Pathways Secured Position is under-secured, the claim of the SBA as stated in the SBA POC No. 15 ("SBA Secured Position") is a fully unsecured claim pursuant to the provisions of Section 506.

102.    The Plaintiff is entitled to the entry of an order (a) determining that the SBA Secured Position is junior to and subordinate to the Pathways Secured Position, (b) determining that the SBA POC No. 15 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim, and (c) determining that the SBA is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

**Claims Against the Samson Defendants and the Money Well Defendants** - Avoidance of Lien, Determination that the Samson RPA is a disguised loan, Determination that Ohio law applies to the Samson RPA, Section 506 Valuation, Avoidance and Recovery of Preferences, Objection to Claim and Violation of the Automatic Stay

A.    Avoidance of Lien

103.    The Plaintiff restates and reaffirms all prior paragraphs with respect to all

claims against the Samson Defendants and Money Well Defendants as if fully rewritten.

104.   The Samson POC No. 2, the Samson POC No. 3, and the Samson POC No. 19 each rely upon the Samson RPA, which asserts to be a purchase from the Debtor of accounts by Samson MCA LLC rather than a loan. Yet, the Samson UCC, which is also attached to each of these proofs of claim, attempts to perfect a security interest over what is essentially a Blanket Lien on the Debtor's Assets. But the Samson UCC was not filed by Samson MCA LLC – or even by Samson Funding, whatever that may be. Rather, the Samson UCC was filed by one of the Money Well Defendants – MV GRP Capital – as the secured party. The Samson Security Agreement grants a security interest to Samson MCA LLC – not MV GRP Capital. In fact, MV GRP Capital is not mentioned in any of the three proofs of claim filed by the Samson Defendants. If any of the Samson Defendants is a secured creditor, none of them properly perfected their security interest by filing a UCC Financing Statement consistent with Ohio law.

105.   Since MV GRP Capital is not a party to the Samson RPA, it does not hold a claim against the Debtor. Nor is it the holder of a security interest in the Debtor's Assets. Only the holder of a security interest in the Debtor's Assets can perfect the security interest by filing a UCC Financing Statement.

106.   Neither the Samson Defendants nor the Money Well Defendants hold a valid and perfected security interest in the Debtor's Assets. The Samson Defendants are, at most, the holder(s) of an unperfected security interest in the Debtor's Assets. The Money Well Defendants do not hold a security interest in the Debtor's Assets, so the filing of the Samson UCC could not perfect any rights or interests of the Money Well Defendants.

107.    The Plaintiff is entitled to avoid the Samson UCC pursuant to the provisions of 11 U.S.C. § 544 ("Section 544"). The Plaintiff is further entitled to the preservation of the avoided Samson UCC pursuant to the provisions of 11 U.S.C. § 551 ("Section 551").

B.  Determination that the Samson RPA is a disguised loan

108.    The Plaintiff is entitled to an order determining that the Samson RPA is a disguised loan and is not a sale or purchase of accounts.

109.    The Plaintiff is also entitled to an order determining that the Samson RPA is subject to all applicable laws and regulations regarding commercial loans, including applicable provisions of the UCC and state usury laws.

C.  Section 506 Valuation and Objection to Claim

110.    Even if the Samson Defendants or the Money Well Defendants hold a valid and perfected security interest in the Debtor's Assets (collectively, the "Samson Secured Position"), the Samson Secured Position is junior to and subordinate to both the Pathways Secured Position and the SBA Secured Position.

111.    Because the Pathways Secured Position is under-secured and the SBA Secured Position is fully unsecured, the Samson Secured Position is also fully unsecured.

112.    The Plaintiff is entitled to the entry of an order (a) determining that the Samson Secured Position is junior to and subordinate to the Pathways Secured Position, (b) determining that (subject to further claims objections in this Complaint) the Samson POC No. 2, the Samson POC No. 3, and/or the Samson POC No. 19 shall be allowed, if at all, as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim, and (c) determining that the Samson Defendants are not entitled to receive

any proceeds from the sale of the Debtor's Assets by the Plaintiff and are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

    D.  <u>Additional Objections to Claims</u>

113.   The Samson Defendants are only entitled to one claim. The Plaintiff is entitled to the entry of an order denying any Samson POC that is a duplicate of any other Samson POC so that, at the most, the Samson Defendants are only allowed one POC in the Debtor's Case.

114.   The Plaintiff objects to the amount claimed (collectively, the "Samson Claim Amount") in the Samson POCs for the following reasons:

    A.  The Samson Claim Amount is not supported by an accounting or other evidence of the calculation of the Samson Claim Amount;

    B.  The Samson Claim Amount includes interest, fees, penalties, and other charges (collectively, the "Samson Add-Ons") that are not allowable by law, because among other reasons, these the Samson Add-Ons cause the Samson RPA to be usurious; and

    C.  The Samson RPA is a contract of adhesion. It was drafted by the Samson Defendants, given on a take-it-or-leave-it basis to the Debtor as a weaker party, and produced in a standard print form. The Debtor had no meaningful power or opportunity to bargain about the terms of the Samson RPA.

115.   The Plaintiff is entitled to an order reducing the Samson Claim Amount and/or denying the Samson POCs in their entirety.

E.  Determination that Ohio Law Applies to the Samson RPA

116.    The Samson RPA purports to require the application of New York law. However, Ohio law should apply to the Samson RPA. The Samson RPA was negotiated and formed in Ohio, and the accounts receivable, which were the consideration for the loan, were generated in Ohio. Further, the Debtor was organized in Ohio, and its principal place of business was in Ohio.

117.    Substantial injustice would result from applying the choice-of-law provision designating New York law as controlling for the Samson RPA due to, among other reasons, the adhesive nature of the Samson RPA. The Plaintiff is entitled to a declaratory judgment determining that Ohio law applies to all disputes, rights, and issues regarding the Samson RPA.

F.  Violation of the Automatic Stay

118.    The entry of the Samson MCA Judgment violated the automatic stay provisions of 11 U.S.C. § 362 ("Section 362"). The Samson Defendants had actual knowledge of the Debtor's Case when the Samson MCA Judgment was entered, so the violation of the automatic stay was willful.

119.    The Plaintiff is entitled to an order (a) determining that the Samson MCA Judgment is void and or voidable, and (b) granting the Plaintiff an award of costs or sanctions against the Samson Defendants for the willful violation of the automatic stay.

G.  Avoidance and Recovery of Preferences and Money Judgment

120.    Upon information and belief, the Samson Direct Payments and the Samson Collection Payments (collectively, the "Samson Payments") were all made during the Preference Period.

121.    Each of the Samson Payments constituted a transfer of an interest in property of the Debtor.

122.    The Samson Defendants were all creditors of the Debtor at the time of each of the Samson Payments.

123.    Each of the Samson Payments was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Samson Payments were for debts owed by the Debtor to the Samson Defendants and the payment of each was for the benefit of the Samson Defendants.

124.    Each of the Samson Payments was made for, or on account of, an antecedent debt owed by the Debtor to the Samson Defendants before the Samson Payments were made.

125.    Each of the Samson Payments was made while the Debtor was insolvent, based upon the information contained in documents/schedules filed or provided by the Debtor in the Debtor's Case or in connection with the Debtor's Case, and further based upon the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways.

126.    The Plaintiff is also entitled to the presumption of insolvency for the Samson Payments pursuant to 11 U.S.C. § 547(f).

127.    As a result of each of the Samson Payments, the Samson Defendants received more than they would have received if (i) the Debtor's Case were under chapter 7 of the Bankruptcy Code, (ii) the Samson Payments had not been made, and (iii) the Samson Defendants received payment of their debt under the provisions of the Bankruptcy Code.

128.    Specifically, as evidenced by the Debtor's schedules as well as the proofs of claim that have been filed in the Debtor's Case, and the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payment of their claims from the Debtor's bankruptcy estate. If the Samson Payments are not avoided, the Samson Defendants will retain all those funds. Yet the Samson Defendants would be entitled only to a portion of those funds had the Samson Payments not been made.

129.    Accordingly, the Samson Payments are avoidable pursuant to 11 U.S.C. § 547(b).

130.    Further, the Samson Defendants were the initial transferee of the Samson Payments, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Samson Payments were made.

131.    Pursuant to 11 U.S.C. § 550, the Plaintiff is entitled to recover, for the benefit of the Debtor's bankruptcy estate, the value of any avoided transfers, including the Samson Payments, from the Samson Defendants as the person or entity for whose benefit the transfers were made, or as the immediate or mediate transferee of the transfers.

132.    In addition, in any monetary judgment against the Samson Defendants regarding the Samson Payments, the Plaintiff is entitled to an award of pre- and post-judgment interest from the date of this complaint.

133.    In addition to all other objections asserted by the Plaintiff to the Samson POCs the Plaintiff states that the Samson Defendants are the transferee of the Samson

Payments, which are avoidable under 11 U.S.C. § 547, which property or its value is recoverable under 11 U.S.C. § 550.

134.    The Samson Defendants have not satisfied any liability for the Samson Payments.

135.    Pursuant to 11 U.S.C. § 502(d), any claims held by the Samson Defendants or any assignee against the Debtor must be disallowed unless and until the Samson Defendants pay to Plaintiff the amount of the Samson Payments and other obligations as described in this Complaint or any Amendments.

136.    Pursuant to 11 U.S.C. § 502(j), any and all previously allowed claims of the Samson Defendants against the Debtor or its estate, including any and all claims assigned by the Samson Defendants, must be reconsidered and disallowed until such time as the Samson Defendants pay to Plaintiff the amount equal to the Samson Payments and other obligations as described in this Complaint or any Amendments.

**Claims Against Downtown Electric** – Avoidance of Lien and Avoidance of Lien as Preference, Objection to Claim

137.    The Plaintiff restates and reaffirms all prior paragraphs with respect to all claims against Downtown Electric as if fully rewritten.

138.    If Downtown Electric did file a UCC Financing Statement in Colorado or in any other state in an attempt to perfect the Downtown Electric Security Interest (a "Downtown Electric Non-Ohio UCC"), the Downtown Electric Non-Ohio UCC would not result in the perfection of the Downtown Electric Security Interest.

139.    Therefore, the Plaintiff is entitled to the entry of an order avoiding any Downtown Electric Non-Ohio UCC pursuant to Section 544 and preserving the avoided

Downtown Electric Non-Ohio UCC for the benefit of the bankruptcy estate pursuant to Section 551.

140.   In addition, the Plaintiff is entitled to the entry of an order avoiding the Downtown Electric UCC as a preference pursuant to the provisions of Section 547 and preserving the avoided Downtown Electric UCC for the benefit of the bankruptcy estate pursuant to Section 551.

141.   The Plaintiff is entitled to the entry of an order determining (a) that the Downtown Electric POC No. 25 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim, (b) that Downtown Electric is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff, and (c) that Downtown Electric is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

**Claims Against Systems Electric** – Avoidance of Lien and Avoidance of Lien as Preference, Objection to Claim

142.   The Plaintiff restates and reaffirms all prior paragraphs with respect to all claims against Systems Electric as if fully rewritten.

143.   If Systems Electric did file a UCC Financing Statement in Colorado or in any other state in an attempt to perfect the Systems Electric Security Interest (a "Systems Electric Non-Ohio UCC"), the Systems Electric Non-Ohio UCC would not result in the perfection of the Systems Electric Security Interest.

144.   Therefore, the Plaintiff is entitled to the entry of an order avoiding any Systems Electric Non-Ohio UCC pursuant to Section 544 and preserving the avoided Systems Electric Non-Ohio UCC for the benefit of the bankruptcy estate pursuant to Section 551.

145.   In addition, the Plaintiff is entitled to the entry of an order avoiding the Systems Electric UCC as a preference pursuant to the provisions of Section 547, and preserving the avoided Systems Electric UCC for the benefit of the bankruptcy estate pursuant to Section 551.

146.   The Plaintiff is entitled to the entry of an order determining (a) that the Systems Electric POC No. 31 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim, (b) that Systems Electric is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff, and (c) that Systems Electric is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

**Claims Against the Vandenberg Defendants** – Avoidance of Lien and Avoidance of Lien as Preference, Claim Objection, Recovery or Turnover of Converted Assets and Payments, Money Judgment and Avoidance and Recovery of Preferences

A.  Lien Avoidance

147.   The Plaintiff restates and reaffirms all prior paragraphs with respect to all claims against the Vandenburg Defendants as if fully rewritten.

148.   The filing of the Vandenburg Florida UCC did not perfect the Vandenburg Security Agreement under applicable law.

149.   Therefore, the Plaintiff is entitled to the entry of an order avoiding the Vandenburg Florida UCC pursuant to Section 544, and preserving the avoided Vandenburg Florida UCC for the benefit of the bankruptcy estate pursuant to Section 551.

150.   In addition, the Plaintiff is entitled to the entry of an order avoiding the Vandenburg UCC as a preference pursuant to the provisions of Section 547, and

preserving the avoided Vandenburg UCC for the benefit of the bankruptcy estate pursuant to Section 551.

151.    If, or to the extent that the Vandenburg POC No. 20 is allowed, the Plaintiff is entitled to the entry of an order determining (a) that the Vandenburg POC No. 30 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim, (b) that the Vandenburg Defendants are not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff, and (c) are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

B.  <u>Claims Objection</u>

152.    The Plaintiff is entitled to the entry of an order reducing the amount of the Vandenburg POC No. 20, and/or eliminating and disallowing the Vandenburg POC No. 20 entirely, due to the allowance of claims of the Plaintiff against the Vandenburg Defendants, regarding the Converted Accounts Receivable, the Converted Equipment and Inventory, and the actions of the Vandenburg Defendants, including their intentional and willful misbehavior and fraud.

C.  <u>Recovery or Turnover of the Converted Equipment and Inventory and the Converted Accounts Receivable and for Money Judgment</u>

153.    The Plaintiff is entitled to a judgment against the Vandenburg Defendants for conversion and/or for turnover pursuant 11 U.S.C. § 542 ("Section 542") for the recovery of the Converted Equipment and Inventory and the Converted Accounts Receivable or the value of the Converted Equipment and Inventory and the Converted Accounts Receivable.

154.    The Plaintiff is entitled to a money judgment against the Vandenburg Defendants equal to the value of the Converted Equipment and Inventory and the Converted Accounts Receivable.

D.  Money Judgment for Fraud and other Intentional Actions

155.    The Plaintiff is also entitled to a money judgment against the Vandenburg Defendants equal to the value of the Converted Equipment and Inventory and the Converted Accounts Receivable based upon the nature of the intentional actions and fraud exhibited by the Vandenburg Defendants.

156.    Further, the Plaintiff is entitled to a judgment against the Vandenburg Defendants for punitive damages, costs, and attorney fees resulting from the fraud and other forms of intentional misconduct by the Vandenburg Defendants.

E.  Avoidance and Recovery of Preferences and Money Judgment

157.    Upon information and belief, some or all the Vandenburg actions regarding the Converted Equipment and Inventory and the Vandenburg Converted Accounts Receivable, including any payments or proceeds from the same (collectively, the "Vandenburg Payments"), were made or received during the Preference Period.

158.    Each of the Vandenburg Payments constituted a transfer of an interest in property of the Debtor.

159.    The Vandenburg Defendants were a creditor of the Debtor at the time of each of the Vandenburg Payments.

160.    Each of the Vandenburg Payments was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Vandenburg Payments were for

debts owed by the Debtor to the Vandenburg Defendants and the payment was for the benefit of the Vandenburg Defendants.

161.    Each of the Vandenburg Payments was made for, or on account of, an antecedent debt owed by the Debtor to the Vandenburg Defendants before the Vandenburg Payments were made.

162.    Each of the Vandenburg Payments was made while the Debtor was insolvent based upon the information contained in documents/schedules filed or provided by the Debtor in the Debtor's Case or in connection with the Debtor's Case, and further based upon the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways.

163.    The Plaintiff is also entitled to the presumption of insolvency for the Vandenburg Payments pursuant to 11 U.S.C. § 547(f).

164.    As a result of each of the Vandenburg Payments, the Vandenburg Defendants received more than they would have received if (i) the Debtor's Case were under chapter 7 of the Bankruptcy Code, (ii) the Vandenburg Payments had not been made, and (iii) the Vandenburg Defendants received payment of their debt under the provisions of the Bankruptcy Code.

165.    Specifically, as evidenced by the Debtor's schedules as well as the proofs of claim that have been filed in the Debtor's Case, and the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payment of their claims from the Debtor's bankruptcy estate. If the Vandenburg Payments are not avoided, the Vandenburg Defendants will retain all those funds. Yet the Vandenburg

Defendants would be entitled only to a portion of those funds had the Vandenburg Payments not been made or received.

166.    Accordingly, the Vandenburg Payments are avoidable pursuant to 11 U.S.C. § 547(b).

167.    Further, the Vandenburg Defendants were the initial transferee of the Vandenburg Payments, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the were made Payments were made.

168.    Pursuant to Section 550, the Plaintiff is entitled to recover, for the benefit of the Debtor's bankruptcy estate, the value of any avoided transfers, including the Vandenburg Payments, from the Vandenburg Defendants as the person or entity for whose benefit the transfers were made, or as the immediate or mediate transferee of the transfers.

169.    In addition, in any monetary judgment against the Vandenburg Defendants regarding the Vandenburg Payments, the Plaintiff is entitled to an award of pre- and post-judgment interest from the date of this complaint.

170.    In addition to all other objections asserted by the Plaintiff to the Vandenburg POC No. 20 the Plaintiff states that the Vandenburg Defendants are the transferee of the Vandenburg Payments, which are avoidable under Section 547, which property or its value is recoverable under Section 550.

171.    The Vandenburg Defendants have not satisfied any liability for the Samson Payments.

172.    Pursuant to 11 U.S.C. § 502(d), any claims held by the Vandenburg Defendants or any assignee against the Debtor must be disallowed unless and until the

Vandenburg Defendants pay to Plaintiff the amount of the Vandenburg Payments and other obligations as described in this Complaint or any Amendments.

173.    Pursuant to 11 U.S.C. § 502(j), any and all previously allowed claims of the Vandenburg Defendants against the Debtor or its estate, including any and all claims assigned by the Vandenburg Defendants, must be reconsidered and disallowed until such time as the Vandenburg Defendants pay to Plaintiff the amount equal to the Vandenburg Payments and other obligations as described in this Complaint or any Amendments.

**Claims Against Alantes**

174.    The Plaintiff restates and reaffirms all prior paragraphs with respect to all claims against Alantes as if fully rewritten.

175.    Alantes is not a creditor of the Debtor and Alantes does not hold any claim against the Debtor.

176.    The Debtor did not grant Alantes a security interest in the Debtor's Assets.

177.    The Debtor did not authorize Alantes to file the Alantes UCC.

178.    Therefore, the Plaintiff is entitled to the entry of an order avoiding the Alantes UCC pursuant to Section 544 and preserving the avoided Alantes UCC for the benefit of the bankruptcy estate pursuant to Section 551.

179.    The Plaintiff is also entitled to an order determining that Alantes is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

**Claims Against the Pearl Defendants** - Avoidance of Lien, Determination that the Pearl RPA is a disguised loan, Determination that Ohio law applies to the Pearl RPA, and Avoidance and Recovery of Preferences

A. Avoidance of Lien

180.    The Plaintiff restates and reaffirms all prior paragraphs with respect to all claims against the Pearl Defendants as if fully rewritten.

181.    The Plaintiff is entitled to the entry of an order avoiding the Pearl UCC as a preference pursuant to the provisions of Section 547 and preserving the avoided Pearl UCC for the benefit of the bankruptcy estate pursuant to Section 551.

182.    The Plaintiff is also entitled to an order determining that the Pearl Defendants are not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

B. Determination that the Pearl RPA is a disguised loan

183.    The Plaintiff is entitled to an order determining that the Pearl RPA is a disguised loan and is not a sale or purchase of accounts.

184.    The Plaintiff is also entitled to an order determining that the Pearl RPA is subject to all applicable laws and regulations regarding commercial loans, including applicable provisions of the UCC and state usury laws.

C. Determination that Ohio Law Applies to the Pearl RPA

185.    The Samson RPA purports to require the application of New York law. However, Ohio law should apply to the Pearl RPA. The Pearl RPA was negotiated and formed in Ohio and the accounts receivable, which were the consideration for the loan,

were generated in Ohio. Further, the Debtor was organized in Ohio, and its principal place of business was in Ohio.

186.    Substantial injustice would result from applying the choice-of-law provision designating New York law as controlling for the Pearl RPA due to, among other reasons, the adhesive nature of the Pearl RPA. The Plaintiff is entitled to a declaratory judgment determining that Ohio law applies to all disputes, rights, and issues regarding the Pearl RPA.

D.  Avoidance and Recovery of Preferences and Money Judgment

187.    Upon information and belief, the Pearl Direct Payments and the Pearl Collection Payments (collectively, the "Pearl Payments") were all made during the Preference Period.

188.    Each of the Pearl Payments constituted a transfer of an interest in property of the Debtor.

189.    The Pearl Defendants were a creditor of the Debtor at the time of each of the Pearl Payments.

190.    Each of the Pearl Payments was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the Pearl Payments were for debts owed by the Debtor to the Pearl Defendants and the payment of it was for the benefit of the Pearl Defendants.

191.    Each of the Pearl Payments was made for, or on account of, an antecedent debt owed by the Debtor to the Pearl Defendants before the Pearl Payments were made.

192.    Each of the Pearl Payments was made while the Debtor was insolvent based upon the information contained in documents/schedules filed or provided by the

Debtor in the Debtor's Case or in connection with the Debtor's Case and further based upon the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways.

193.  The Plaintiff is also entitled to the presumption of insolvency for the Pearl Payments pursuant to 11 U.S.C. § 547(f).

194.  As a result of each of the Pearl Payments, the Pearl Defendants received more than they would have received if (i) the Debtor's Case were under chapter 7 of the Bankruptcy Code, (ii) the Pearl Payments had not been made, and (iii) the Pearl Defendants received payment of its or their debt under the provisions of the Bankruptcy Code.

195.  Specifically, as evidenced by the Debtor's schedules as well as the proofs of claim that have been filed in the Debtor's Case, and the sale of the Debtor's Assets by the Plaintiff and the collection of accounts receivable by Pathways, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payment of their claims from the Debtor's bankruptcy estate. If the Pearl Payments are not avoided, the Pearl Defendants will retain all those funds. Yet the Pearl Defendants would be entitled only to a portion of those funds had the Pearl Payments not been made.

196.  Accordingly, the Pearl Payments are avoidable pursuant to 11 U.S.C. § 547(b).

197.  Further, the Pearl Defendants were the initial transferees of the Pearl Payments, or the immediate or mediate transferees of such initial transferee, or the person or entities for whose benefit the Pearl Payments were made.

198.    Pursuant to Section 550, the Plaintiff is entitled to recover, for the benefit of
the Debtor's bankruptcy estate, the value of any avoided transfers, including the Pearl
Payments, from the Pearl Defendants as the person or entities for whose benefit the
transfers were made, or as the immediate or mediate transferees of the transfers.

199.    In addition, in any monetary judgment against the Pearl Defendants
regarding the Pearl Payments, the Plaintiff is entitled to an award of pre- and post-
judgment interest from the date of this complaint.

**Claims Against all Defendants**

A.  Fraudulent Transfers

200.    The Plaintiff restates and reaffirms all prior paragraphs with respect to all
claims against all the Defendants as if fully rewritten.

201.    To the extent that any payment or transfer of any type that was identified in
this Complaint or that may yet be discovered by the Plaintiff is determined to have been
made without fair consideration, or with the intent to hinder, delay, or defraud the Plaintiff
or a creditor, and if the other relevant provisions of 11 U.S.C. § 548 ("Section 548") can
be established, then the Plaintiff requests authority (a) to amend this Complaint as
necessary to allege a cause of action pursuant to Section 548 effective as of the date of
the Complaint, and (b) to obtain a judgment for relief pursuant to Section 548 and any
related Bankruptcy Code sections that may be necessary to grant the relief.

B.  Post-Petition Transfers

202.    To the extent that any payment or transfer of any type that was identified in
this Complaint or that may yet be discovered by the Plaintiff is determined to have been
made after the Petition Date and if the other relevant provisions of 11 U.S.C. § 549

("Section 549") can be established, then the Plaintiff requests authority (a) to amend the Complaint as necessary to allege a cause of action pursuant to Section 549 effective as of the date of the Complaint, and (b) to obtain a judgment for relief pursuant to Section 549 and any related Bankruptcy Code sections that may be necessary to grant the relief.

### C.  Pre-Judgment and Post-Judgment Interest

203.   The Plaintiff is entitled with respect to any judgment granted against any Defendant for money damages for an order additionally granting the Plaintiff a judgment against the Defendant for pre- and post- judgment interest at the maximum legal rate, to the extent allowed by law.

### D.  Attorney Fees and Costs

204.   The Plaintiff is entitled to a judgment for reasonable attorneys' fees and expenses, and the costs of this action, to the extent permitted by law.

### E.  The Pathways Secured Position

205.   The Plaintiff is entitled to an order determining that the Pathways Secured Position is the first-priority security interest in and lien upon the Debtor's Assets. The Plaintiff is further entitled to an order determining that the Plaintiff may distribute proceeds from the sale of the Debtor's Assets to Pathways free and clear of any lien, claim, or interest of any Defendant.

### PRAYER FOR RELIEF

Based on the foregoing, the Plaintiff respectfully requests that the following relief be granted:

<u>Regarding the SBA</u>[7]

1.      An order determining that the security interest of the SBA in the Debtor's Assets, and its lien upon the Debtor's Assets, are both junior and subordinate to the Pathways Secured Positoin.

2.      An order determining that the claim of the SBA as stated in the SBA POC No. 15 and the SBA Secured Position is a fully unsecured claim pursuant to the provisions of Section 506.

3.      An order determining that the SBA is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

<u>Regarding the Samson Defendants and the Money Well Defendants</u>

1.      An order avoiding the Samson UCC pursuant to the provisions of Section 544, and an order preserving the avoided Samson UCC pursuant to the provisions of Section 551.

2.      An order determining that the Samson RPA is a disguised loan and is not a sale or purchase of accounts.

3.      An order determining that the Samson RPA is subject to all applicable laws and regulations regarding commercial loans, including applicable provisions of the UCC and state usury laws.

4.      An order determining that the Samson Secured Position is junior to and subordinate to both the Pathways Secured Position and the SBA Secured Position.

---

[7] Capitalized terms in the Prayer for Relief shall have the same meaning as in the Complaint.

5.      An order determining that the Samson Secured Position and the Samson POCs are fully unsecured

6.      An order determining that (subject to further claim objections in this Complaint) the Samson POC No. 2, the Samson POC No. 3, and/or the Samson POC No. 19 shall be allowed, if at all, as a general unsecured claim in the Debtor's Case, and shall not be allowed as a secured claim.

7.      An order determining that the Samson Defendants are not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

8.      An order reducing the Samson Claim Amount and/or denying the Samson POCs in their entirety.

9.      An order determining that Ohio law applies to all disputes, rights, and issues regarding the Samson RPA.

10.     An order determining that the Samson MCA Judgment is void and/or voidable.

11.     An order granting the Plaintiff an award of costs or sanctions against the Samson Defendants for the willful violation of the automatic stay.

12.     An order determining that the Samson Payments are avoidable pursuant to 11 U.S.C. § 547(b).

13.     An order pursuant to 11 U.S.C. § 550, determining that the Plaintiff is entitled to recover, for the benefit of the Debtor's bankruptcy estate, the value of any avoided transfers, including the Samson Payments, from the Samson Defendants as the

person or entity for whose benefit the transfers were made, or as the immediate or mediate transferee of the transfers.

14.     An order pursuant to 11 U.S.C. § 502(d), determining that any claims held by the Samson Defendants or any assignee against the Debtor must be disallowed unless and until the Samson Defendants pay to Plaintiff the amount of the Samson Payments and other obligations as described in this Complaint or any Amendments.

15.     An order pursuant to 11 U.S.C. § 502(j), determining that any and all previously allowed claims of the Samson Defendants against the Debtor or its estate, including any and all claims assigned by the Samson Defendants, must be reconsidered and disallowed until such time as the Samson Defendants pay to Plaintiff the amount equal to the Samson Payments and other obligations as described in this Complaint or any Amendments.

<u>Regarding Downtown Electric</u>

1.     An order avoiding any Downtown Electric Non-Ohio UCC pursuant to Section 544 and preserving the avoided Downtown Electric Non-Ohio UCC for the benefit of the bankruptcy estate pursuant to Section 551.

2.     An order avoiding the Downtown Electric UCC as a preference pursuant to the provisions of Section 547 and preserving the avoided Downtown Electric UCC for the benefit of the bankruptcy estate pursuant to Section 551.

3.     An order determining that the Downtown Electric POC No. 25 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim.

4.      An order determining that Downtown Electric is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

Regarding Systems Electric

1.      An order avoiding any Systems Electric Non-Ohio UCC pursuant to Section 544 and preserving the avoided Systems Electric Non-Ohio UCC for the benefit of the bankruptcy estate pursuant to Section 551.

2.      An order avoiding the Systems Electric UCC as a preference pursuant to the provisions of Section 547 and preserving the avoided Systems Electric UCC for the benefit of the bankruptcy estate pursuant to Section 551.

3.      An order determining that the Systems Electric POC No. 31 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim.

4.      An order determining that Systems Electric is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

Regarding the Vandenberg Defendants

1.      An order avoiding the Vandenburg Florida UCC pursuant to Section 544 and preserving the avoided Vandenburg Florida UCC for the benefit of the bankruptcy estate pursuant to Section 551.

2.      An order avoiding the Vandenburg UCC as a preference pursuant to the provisions of Section 547 and preserving the avoided Vandenburg UCC for the benefit of the bankruptcy estate pursuant to Section 551.

3.      If, or to the extent that the Vandenburg POC No. 20 is allowed, then the entry of an order determining that the Vandenburg POC No. 30 shall be allowed as a general unsecured claim in the Debtor's Case and shall not be allowed as a secured claim.

4.      An order determining that the Vandenburg Defendants are not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

5.      An order reducing the amount of the Vandenburg POC No. 20 and/or eliminating entirely and disallowing the Vandenburg POC No. 20 due to the allowance of claims of the Plaintiff against the Vandenburg Defendants, regarding the Converted Accounts Receivable, the Converted Equipment and Inventory, and the actions of the Vandenburg Defendants, including their intentional and willful misbehavior and fraud.

6.      A judgment against the Vandenburg Defendants for conversion and/or for turnover pursuant 11 U.S.C. § 542 ("Section 542") for the recovery of the Converted Equipment and Inventory and the Converted Accounts Receivable, or the value of the Converted Equipment and Inventory and the Converted Accounts Receivable.

7.      A money judgment against the Vandenburg Defendants equal to the value of the Converted Equipment and Inventory and the Converted Accounts Receivable.

8.      A money judgment against the Vandenburg Defendants equal to the value of the Converted Equipment and Inventory and the Converted Accounts Receivable based upon the nature of the intentional actions and fraud exhibited by the Vandenburg Defendants.

9.      A judgment against the Vandenburg Defendants for punitive damages, costs, and attorney fees resulting from the fraud and other forms of intentional misconduct by the Vandenburg Defendants.

10.      An order determining that the Vandenburg Payments are avoidable pursuant to 11 U.S.C. § 547(b).

11.      An order pursuant to 11 U.S.C. § 550, determining that the Plaintiff is entitled to recover, for the benefit of the Debtor's bankruptcy estate, the value of any avoided transfers, including the Vandenburg Payments, from the Vandenburg Defendants as the person or entity for whose benefit the transfers were made, or as the immediate or mediate transferee of the transfers.

12.      An order pursuant to 11 U.S.C. § 502(d), determining that any claims held by the Vandenburg Defendants or any assignee against the Debtor must be disallowed unless and until the Vandenburg Defendants pay to Plaintiff the amount of the Vandenburg Payments and other obligations as described in this Complaint or any Amendments.

13.      An order pursuant to 11 U.S.C. § 502(j), determining that any and all previously allowed claims of the Vandenburg Defendants against the Debtor or its estate, including any and all claims assigned by the Vandenburg Defendants, must be reconsidered and disallowed until such time as the Vandenburg Defendants pay to Plaintiff the amount equal to the Vandenburg Payments and other obligations as described in this Complaint or any Amendments.

<u>Regarding Alantes</u>

1.      An order avoiding the Alantes UCC pursuant to Section 544, and preserving the avoided Alantes UCC for the benefit of the bankruptcy estate pursuant to Section 551.

2.      An order determining that Alantes is not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and is not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

<u>Regarding the Pearl Defendants</u>

1.      An order avoiding the Pearl UCC pursuant to the provisions Section 544, and an order preserving the avoided Pearl UCC pursuant to the provisions of 11 Section 551.

2.      An order avoiding the Pearl UCC as a preference pursuant to the provisions of Section 547, and preserving the avoided Pearl UCC for the benefit of the bankruptcy estate pursuant to Section 551.

3.      An order determining that the Pearl RPA is a disguised loan and is not a sale or purchase of accounts.

4.      An order determining that the Pearl RPA is subject to all applicable laws and regulations regarding commercial loans, including applicable provisions of the UCC and state usury laws.

5.      An order determining that the Pearl Secured Position is junior to and subordinate to both the Pathways Secured Position and the SBA Secured Position.

6.      An order determining that the Pearl Secured Position is fully unsecured.

7.      An order determining that the Pearl Defendants are not entitled to receive any proceeds from the sale of the Debtor's Assets by the Plaintiff and are not entitled to assert any other secured position, claim to, or lien upon any of the Debtor's Assets.

<u>Regarding all Defendants</u>

1.      An order determining that, to the extent that any payment or transfer of any type that was identified in this Complaint or that may yet be discovered by the Plaintiff is determined to have been made without fair consideration, or with the intent to hinder, delay, or defraud the Plaintiff or a creditor, and if the other relevant provisions of 11 U.S.C. § 548 ("Section 548") can be established, then the Plaintiff is authorized (a) to amend the Complaint as necessary to allege a cause of action pursuant to Section 548 effective as of the date of the Complaint, and (b) to obtain a judgment for relief pursuant to Section 548 and any related Bankruptcy Code sections that may be necessary to grant the relief.

2.      An order determining that to the extent that any payment or transfer of any type that was identified in this Complaint or that may yet be discovered by the Plaintiff is determined to have been made after the Petition Date and if the other relevant provisions of 11 U.S.C. § 549 ("Section 549") can be established, then the Plaintiff is authorized (a) to amend the Complaint as necessary to allege a cause of action pursuant to Section 549 effective as of the date of the Complaint, and (b) to obtain a judgment for relief pursuant to Section 549 and any related Bankruptcy Code sections that may be necessary to grant the relief.

3.      An order determining that the Plaintiff is entitled with respect to any judgment granted against any Defendant for money damages to an order additionally

granting the Plaintiff a judgment against the Defendant for pre- and post- judgment interest at the maximum legal rate, to the extent allowed by law.

4.      An order determining that the Plaintiff is entitled to a judgment for reasonable attorneys' fees and expenses, and costs of this action to the extent permitted by law.

5.      An order determining that the Pathways Secured Position is the first-priority security interest in, and lien upon, the Debtor's Assets.

6.      An order determining that the Plaintiff may distribute proceeds from the sale of the Debtor's assets to Pathways free and clear of any lien, claim, or interest of any Defendant.

7.      An order granting any relief requested in the Complaint.

8.      An order granting any other relief the Court deems just, proper, or equitable.

Respectfully submitted,

  /s/ David M. Whittaker
David M. Whittaker  (0019307)
Richard K. Stovall    (0029978)
James A. Coutinho  (0082430)
Andrew D. Rebholz (0102192)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215
T: 614-221-8500     F: 614-221-5988
whittaker@asnalaw.com; stovall@asnalaw.com
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel for the Plaintiff Christal L. Caudill, Trustee*